## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

MATTHEW F.,[1]

                Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                Defendant.

Case No. 3:21-cv-00187-SLG

## <u>DECISION AND ORDER</u>

On or about October 1, 2018, Matthew F. ("Plaintiff") protectively filed an

application for disability insurance benefits ("DIB") under Title II of the Social

Security Act ("the Act")[2] alleging disability beginning October 1, 2016.[3] Plaintiff has

---

[1] Plaintiff's name is partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Plaintiff brought claims under Titles II and XVI. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI). For convenience, the Court cites the regulations governing disability determinations under both titles.

[3] Administrative Record ("A.R.") 13. The application summaries and confirmation letters, not the applications themselves, appear in the Court's record. Plaintiff contacted the Social Security Administration on October 1, 2018 to schedule a telephone appointment to complete his application for benefits. A.R. 248. A subsequent letter and the application summary confirm his application for benefits was completed on October 19, 2018. A.R. 250, 252. Pursuant to 20 C.F.R. § 416.340-345, a protective filing date establishes the earliest possible application date

exhausted his administrative remedies and filed a Complaint seeking relief from this Court.[4]  Plaintiff's Opening Brief asks the Court to reverse and remand the agency's decision for an award of benefits, or in the alternative, for further administrative proceedings.[5]  The Commissioner filed an Answer and Response Brief.[6]  Plaintiff filed a Reply Brief on January 24, 2022.[7]

The Commissioner agrees with Plaintiff that the final decision contains legal errors and should be reversed.[8]  However, the parties disagree on the appropriate remedy.  Plaintiff seeks reversal and remand directing the immediate payment of benefits, while the Commissioner contends that a remand for further proceedings is warranted.[9]

Oral argument was not requested and was not necessary to the Court's decision.  This Court has jurisdiction to hear an appeal from a final decision of the

---

based on a claimant's oral inquiry about eligibility or a verbal or written statement of intent to file for benefits.  Therefore, the date of Plaintiff's initial telephone call to schedule time to complete his application is considered Plaintiff's application filing date.

[4] Docket 1 (Plaintiff's Compl.).

[5] Docket 15 (Plaintiff's Br.).

[6] Docket 13 (Answer); Docket 21 (Defendant's Br.).

[7] Docket 22 (Reply).

[8] Docket 21 (Defendant's Br.).

[9] Docket 21 (Defendant's Br.); Docket 22 (Reply).

Case No. 3:21-cv-00187-SLG
Decision and Order
Page 2 of 26

Commissioner of Social Security.[10]  For the reasons set forth below, Plaintiff's request for relief is granted.

## I.  STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[11]  "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12]  Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[13]  In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[14]  If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[15]  A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may

---

[10] 42 U.S.C. § 405(g).

[11] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[12] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[13] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[14] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[15] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

not affirm the ALJ on a ground upon which she did not rely."[16]  An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[17]  Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[18]   This duty exists "even when the claimant is represented by counsel."[19]

## II.    DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[20]  In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status

---

[16] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[17] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).

[18] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)); *see also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

[19] *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983)).

[20] 42 U.S.C. § 423(a).

Case No. 3:21-cv-00187-SLG
Decision and Order
Page 4 of 26

under the Act but who are age 65 or older, blind, or disabled.[21]  Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[22]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[23]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[24]  A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[25]  If a

---

[21] 42 U.S.C. § 1381a.

[22] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[23] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[24] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[25] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[26]  The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[27]  The steps, and the ALJ's findings in this case, are as follows:

**Step 1.**  Determine whether the claimant is involved in "substantial gainful activity."[28]  *The ALJ determined that Plaintiff had not engaged in substantial activity since October 1, 2016, the alleged onset date.[29]*

**Step 2.**  Determine whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience.  The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[30]  *The ALJ determined that Plaintiff had the following severe impairments: cervical spine disorder; status post pelvic fracture; carpal tunnel*

---

[26] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[27] *Tackett*, 180 F.3d at 1101.

[28] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[29] A.R. 15.

[30] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

*syndrome (CTS); and migraines.[31]   The ALJ did not find any non-severe impairments.[32]*

**Step 3.**  Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity.  If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled.  If not, the evaluation goes on to the fourth step.[33]  *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.[34]*

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.[35]  Once determined, the RFC is used at both step four and

---

[31] A.R. 15.  The hearing decision and initial Disability Determination Explanation list "Migraine" as a severe impairment. A.R. 66.  However, Plaintiff suffers from cervicogenic tension-type headaches, not migraines.  The use of "migraine" appears to be a misstatement.  At the initial level, the State Agency reviewing physician acknowledges the impairments from "chronic headache syndrome." A.R. 69.  Further, throughout the hearing decision, the terms "migraine," "migraine headaches," "headaches," "chronic headaches," and "cervicogenic headaches" are used interchangeably.  *See* A.R. 15-17, 19. This inconsistent terminology is not critical to the outcome in this matter, but the Commissioner should be mindful of such distinctions.

[32] A.R. 15.

[33] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[34] A.R. 16.

[35] 20 C.F.R. § 416.945.

step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from his impairments, including impairments that are not severe.[36] *The ALJ determined that Plaintiff had the residual functional capacity to perform light work with the following limitations: he could never climb ladders, ropes, or scaffolds; he could frequently crawl and handle, finger, and feel bilaterally; and he must avoid concentrated exposure to extreme cold, excessive vibration, and hazards.*[37]

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this step, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do his past relevant work, the claimant is deemed not to be disabled.[38] Otherwise, the evaluation process moves to the fifth and final step. *The ALJ determined that Plaintiff was unable to perform any past relevant work as a carpenter and carpenter/laborer supervisor as actually and generally performed.*[39]

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of his age, education, and work experience, and in light

---

[36] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[37] A.R. 16-17.

[38] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[39] A.R. 20-21.

of the RFC.  If so, the claimant is not disabled.  If not, the claimant is considered disabled.[40]  *The ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including mailroom clerk (DOT#209.687-026), storage rental clerk (DOT#295.367-026), and sales attendant (DOT#299.677-010).[41]*

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from October 1, 2016, the alleged disability onset date, through January 13, 2021, the date of the ALJ's decision.[42]

## III.  PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was born in 1971 and was 45 years old on his alleged onset date.[43] Plaintiff was 50 years old on his date last insured of December 31, 2021.[44]  In an application for disability insurance benefits filed on October 1, 2018, Plaintiff

---

[40] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[41] A.R. 21-22.

[42] A.R. 22.

[43] A.R. 21.

[44] "The date last insured (DLI) is the last day of the quarter a claimant meets insured status for disability or blindness.  For title II Disability Insurance Benefit (DIB) claims, adjudicators cannot establish onset after the DLI."  Program Operations Manual System (POMS) § DI 25501.320. The POMS, issued by the Social Security Administration (SSA), do not have the force of law, but it is persuasive authority.  *Larson v. Saul,* 967 F.3d 914, 925 (9th Cir. 2020), *cert. denied sub nom. Larson v. Kijakazi,* 142 S. Ct. 896 (2022) (citing *Warre v. Commissioner of the Soc. Sec. Admin.,* 439 F.3d 1001, 1005 (9th Cir. 2006)).

alleged his disability began on October 1, 2016.[45]  Before his stated disability onset

date, he worked as a carpenter and carpenter/laborer supervisor.[46]

On May 7, 2019, the Social Security Administration ("SSA") determined

Plaintiff was not disabled under the applicable rules.[47]  Plaintiff requested a hearing

before an Administrative Law Judge.   The hearing was originally scheduled for

March 20, 2020 but postponed due to the extraordinary circumstance presented

by the COVID-19 pandemic.   On July 15, 2020, Plaintiff and his representative

appeared telephonically for the rescheduled hearing.  The hearing was postponed

again because additional evidence was outstanding.[48]

On November 9, 2020, Plaintiff appeared and testified telephonically with

representation at the final hearing.[49]  A medical expert ("ME") and vocational expert

("VE") also testified by telephone.[50]   On January 13, 2021, the ALJ issued an

unfavorable decision.[51]   On July 1, 2021, the Appeals Council denied Plaintiff's

---

[45] A.R. 248-252.

[46] A.R. 20.

[47] A.R. 73.

[48] A.R. 32.

[49] A.R. 13.

[50] A.R. 35-45 (medical expert testimony); A.R. 52-59 (vocational expert testimony).

[51] A.R. 10-27.

request for review.[52]  On August 9, 2021, Plaintiff appealed the Commissioner's final decision to this Court.[53]

## IV.  DISCUSSION

Plaintiff is represented by counsel in this appeal.  The Commissioner concedes the ALJ's decision contains reversable legal errors.[54]  Specifically, the parties agree the ALJ: (1) did not adequately evaluate whether Plaintiff's headaches impairment medically equals Listing 11.02 per SSR 19-4p; (2) did not adequately evaluate Plaintiff's subjective complaints related to headaches; and (3) did not adequately consider the factors of supportability and consistency when evaluating the persuasiveness of the opinions of Robert Smiley, M.D., or John Bursell, M.D., as required by the recently revised medical regulations.[55]

Therefore, the parties' disagreement in this case focuses on the scope of the remand.  The Commissioner argues that significant factual conflicts exist, so the case should be remanded for further proceedings.[56]  Plaintiff contends any factual conflicts that exist are immaterial, and the case should be remanded for an immediate award of benefits.

---

[52] A.R. 1.

[53] Docket 1.

[54] Docket 21 at 2.

[55] Docket 21; Docket 22.

[56] Docket 15; Docket 21; Docket 22.

A. <u>Legal Standard for Remand</u>

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.[57] When prejudicial error has occurred, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[58]

To determine which type of remand is appropriate, a court follows a three-step analysis.[59] Under the credit-as-true rule, in order to remand for payment of benefits, a court must conclude: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; (2) the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[60] However, "even if all three requirements are met, [a court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt

---

[57] *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987) (remanding for determination of benefits where the panel was "convinced that substantial evidence does not support the Secretary's decision, and because no legitimate reasons were advanced to justify disregard of the treating physician's opinion").

[58] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

[59] *Garrison v. Colvin*, 759 F.3d at 1020 (9th Cir. 2014).

[60] *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017) (internal citations and quotations omitted).

as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'"[61]

Plaintiff asserts that all three requirements are met and there is no serious doubt that Plaintiff is disabled. Defendant asserts that there are factual conflicts in the existing record, such that a remand would serve the useful purpose of fully developing the record. Each of the requirements for remand for immediate payment of benefits is discussed in turn.

B. <u>The ALJ Failed to Provide Legally Sufficient Reasons for Rejecting Evidence</u>

In this case, the parties agree that the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's subjective complaints as well as the opinions of both treating provider Dr. Bursell and testifying medical expert Dr. Smiley.

*1. Plaintiff's Subjective Complaints*

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, she also determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical

---

[61] *Brown-Hunter,* 806 F.3d at 495 (quoting *Garrison,* 759 F.3d at 1021).

Case 3:21-cv-00187-SLG   Document 24   Filed 06/22/22   Page 13 of 26

evidence and other evidence in the record for the reasons explained in this decision."[62]

However, the ALJ did not specifically identify which of Plaintiff's claims were inconsistent with the medical evidence.[63] "To ensure that review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily," an ALJ must "specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination."[64] General findings, such as an ALJ's summary of the medical evidence, do not satisfy this requirement.[65] The Commissioner concedes the ALJ failed to adequately evaluate Plaintiff's subjective complaints related to his headaches,[66] yet the agency requests a remand to allow the ALJ to "reevaluate Plaintiff's subjective allegations."[67] But the Ninth Circuit has held that the Commissioner "should not have another opportunity to show that

---

[62] A.R. 18.

[63] *Lambert v. Saul,* 980 F.3d 1266, 1277-1278 (9th Cir. 2020) ("Our precedents plainly required the ALJ to do more than was done here, which consisted of offering non-specific conclusions that Lambert's testimony was inconsistent with her medical treatment").

[64] *Smith v. Kijakazi,* 14 F.4th 1108, 1112 (9th Cir. 2021) (quoting *Brown-Hunter*, 806 F.3d at 489).

[65] *Lambert*, 980 F.3d at 1277 (explaining that a reviewing court may not "take a general finding—an unspecified conflict between [c]laimant's testimony … and [his] reports to doctors—and comb the administrative record to find specific conflicts") (citing *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)).

[66] Docket 21 at 2.

[67] Docket 21 at 6.

Case No. 3:21-cv-00187-SLG
Decision and Order
Page 14 of 26

[Plaintiff] is not credible any more than [Plaintiff] had he lost, should have an opportunity for remand and further proceedings to establish his credibility."[68]   In sum, the ALJ did not provide clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's subjective symptom complaints, and affording another opportunity for the Commissioner to do so is unwarranted.

    2.  *Medical Opinion of Treating Physician John Bursell, M.D.*

Dr. Bursell provided two medical source opinions, one in October 2018 and one in February 2020.[69]  He opined Plaintiff is unable to consistently participate in a work environment and would be absent more than ten workdays per month due to his symptoms.[70]   The ALJ found Dr. Bursell's opinions unpersuasive, as unsupported by objective findings and not consistent with the totality of the record.[71]

The ALJ acknowledged the record contains "objective findings pertaining to the claimant's ongoing cervical/neck pain, including tenderness to palpitation," but explained that the "overall record shows improvements in [Plaintiff's] symptoms… which [Plaintiff] has reported as beneficial in improving in pain and allowing him to

---

[68] *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).

[69] A.R. 377-378, 406-407, 657-658.

[70] *Id.*

[71] A.R. 20.

Case No. 3:21-cv-00187-SLG
Decision and Order
Page 15 of 26

be more physically active."[72] The ALJ did not provide any specific examples or citations to support this contention.

The Commissioner concedes the ALJ did not adequately consider the factors of supportability and consistency when evaluating the persuasiveness of the opinion of Dr. Bursell.[73]

### 3. Medical Opinion of Testifying Medical Expert Robert Smiley, M.D.

At the hearing, Dr. Smiley testified that "if I am to accept the persistent complaint of disabling headaches established by the record then I would have to say that [Plaintiff's cervicogenic headaches equal] Listing 11.02(D)."[74] While Dr. Smiley did make a broad statement that the "problem [he always has] with chronic pain syndromes and chronic headache is that it is all subjective," he indicated there was no reason to disbelieve Plaintiff's subjective complaints and instead testified that the medical record contained "plenty" about headaches being a persistent problem.[75] Dr. Smiley further acknowledged, "we don't have a claim meter to objectively measure the severity of the pain or the headaches."[76]

---

[72] A.R. 20.

[73] Docket 21 at 2.

[74] A.R. 38-39.

[75] A.R. 39.

[76] A.R. 38-39.

Case No. 3:21-cv-00187-SLG
Decision and Order
Page 16 of 26

Dr. Smiley also opined that "in spite of his opioid therapy, on many days, his headaches are disabling" and agreed with Plaintiff's treating physician that it was reasonable to conclude that Plaintiff would be absent from work on a chronic basis. However, whereas Dr. Bursell opined Plaintiff would be absent ten days each month, Dr. Smiley opined that Plaintiff would be absent at least three workdays per month.[77]  Whether Plaintiff's symptoms would cause him to miss ten days as his treating doctor opined, or three days, as the testifying ME opined, or some number of days in between, this factual conflict is immaterial, because the VE testified that Plaintiff would not be able to sustain employment "if there is an ongoing pattern of two or more absences per month."

The ALJ gave little weight to the testimony of Dr. Smiley, providing the doctor's testimony was "not completely consistent with the medical evidence during the relevant period" and his opinion was based on claimant's subjective complaints.[78]

As with Dr. Bursell, the Commissioner concedes the ALJ did not adequately consider the factors of supportability and consistency when evaluating the persuasiveness of the opinion of Dr. Smiley.[79]

---

[77] A.R. 44-45, 58-59, 658.  *See also Smith v. Saul,* 820 F. App'x 582, 586 (9th Cir. 2020) (remand for calculation and award of benefits where VE finds no jobs for individual with limitations opined by treating physician).

[78] A.R. 20.

[79] Docket 21 at 2.

Case No. 3:21-cv-00187-SLG
Decision and Order
Page 17 of 26

In sum, the Court agrees with the parties that the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's symptom complaints and the medical opinions of Drs. Bursell and Smiley. Therefore, the first requirement of the credit-as-true analysis has been met.

## C. Development of the Record

The Court next considers whether "the record has been fully developed and further administrative proceedings would serve no useful purpose."[80] Further proceedings are only necessary when there are significant factual conflicts between the rejected testimony and the objective medical evidence,[81] such that the record is "uncertain and ambiguous."[82]

The Commissioner maintains there are significant factual conflicts and ambiguities in the medical record that necessitates further administrative proceedings. Specifically, the Commissioner contends Dr. Bursell's opinion conflicts with the medical record indicating Plaintiff reported that pain medication helps control his symptoms, he "was working on exercise, using an exercise bike,

---

[80] *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F3d 1090, 1101 (9th Cir. 2014) (citing *Garrison,* 759 F.3d at 1020).

[81] *Treichler*, 775 F.3d at 1105.

[82] *Id.* at 1105, 1107.

eating well, and maintaining his weight," and "[n]otably, he did not report that he was still bed ridden."[83]

The Ninth Circuit has emphasized that when symptoms wax and wane, it is error to pick out a few isolated instances of improvement over a period of months or years and treat them as a basis for concluding a claimant is capable of working.[84] The Ninth Circuit has also "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities ... does not in any way detract from her credibility as to her overall disability."[85]

The medical records do indicate some reported improvement, but Plaintiff continuously reported constant severe headaches, low endurance, difficultly preparing meals and driving due to fatigue and pain, sensitivity to light and sound, and the need for frequent breaks and to lie down.[86] Plaintiff reported the pain medication took the "sharpness" out of the pain, allowing him to function on a day-

---

[83] Docket 21 at 4.

[84] *Garrison*, 759 F.3d at 1017; *see also Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1201 (9th Cir. 2008) (holding that the fact that a person makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace).

[85] *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("That Diedrich could participate in some daily activities does not contradict the evidence of otherwise severe problems that she encountered in her daily life during the relevant period.") (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)); *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017).

[86] A.R. 46-47, 51, 66, 351-357, 363, 366, 368, 405, 444, 504, 508-509, 514, 562, 563, 564, 557-558, 567.

Case No. 3:21-cv-00187-SLG
Decision and Order
Page 19 of 26

to-day basis.[87]   His treating provider noted his condition was "essentially stable" and "unchanged."[88]

However, indications of stability or improvement do not support a conclusion that Plaintiff can work.[89]   Plaintiff reported he was able to do only "a little more at home overall," his activity level had increased to where "he does not stay in bed all day," he was "better" able to maintain his house, and able to do outside work for "very short periods."[90]   At the hearing, Plaintiff testified his condition "makes it to where I really can't do anything… I have to go lay down and try to let this calm down."[91]   He testified he could only clean or perform other activities for about ten to fifteen minutes, and if he tried to do too much, he would be "pretty inactive" for the "next couple of days."[92]   He also testified he had not driven for a while because it was too difficult for him.[93]   When considered in context, the Commissioner's

_____

[87] A.R. 647.

[88] A.R. 647, 649.

[89] *Christine L. v. Saul*, 450 F. Supp. 3d 1091, 1102 n.4 (D. Or. 2020) ("[A] doctor's notation that a condition is 'stable' during treatment does not necessarily support the conclusion that the patient is able to work.") (quoting *Timothy W. v. Berryhill*, 2018 WL 6817030 at 10 (D. Or. 2018) (internal citations omitted).

[90] A.R. 351-376.

[91] A.R. 46.

[92] A.R. 47.

[93] A.R. 51.

Case No. 3:21-cv-00187-SLG
Decision and Order
Page 20 of 26

selective references to the record are insufficient to establish a significant factual conflict with Dr. Bursell's and Dr. Smiley's opinions.

The Commissioner also points to the opinion of state agency reviewing doctor, Jeffrey Merrill, M.D., which the ALJ found persuasive and used as a basis in her denial of disability benefits. Dr. Merrill completed a medical opinion in May 2019 and opined then that Plaintiff's chronic headache syndrome would cause some workplace limitations but were not overall disabling.[94]

At the time of Dr. Merrill's review, Plaintiff's file included only 26 pages of medical records with dates of service from September 12, 2018 through April 9, 2019.[95] Dr. Merrill did not have or consider either of Dr. Bursell's opinions or the continuing treatment records from any provider.[96] Although additional medical records were requested on April 10, 2019, the agency did not wait for those records before issuing its nondisability determination with Dr. Merrill's opinion on May 7, 2019.[97] Further, despite Plaintiff's insistence that his insurance was not covering

---

[94] A.R. 67-69.

[95] A.R. 351-376. While the records available to Dr. Merrill do show some instances of stability and improvement, they overwhelmingly demonstrate ongoing headaches and limitations. A.R. 351-355.

[96] A.R. 73. At the time of the hearing, the record consisted of approximately 909 pages of medical records. Docket 14-12.

[97] A.R. 63, 73, 379-405.

Case No. 3:21-cv-00187-SLG
Decision and Order
Page 21 of 26

certain medical testing and his willingness to submit to a Consultative Examination (CE), the state agency opted not to order a CE.[98]

Dr. Merrill acknowledged Plaintiff's "chronic headache syndrome" and listed "migraine" as a severe impairment, but did not consider whether Plaintiff's headaches met or equaled Listing 11.02.[99] Further, although Dr. Merrill responded, "yes" under "[a]re the individual's statements about the intensity, persistence, and functionally limiting effects of the symptoms substantiated by the objective medical evidence alone,"[100] the state agency's RFC did not consider the limiting effects of Plaintiff's headaches on his ability to work, such as his need for frequent breaks, sensitivity to light and sound, and limitations in his ability to focus and concentrate.[101]

The Commissioner contends that because the reviewing state agency physician Dr. Merrill opined that Plaintiff's headaches "caused some workplace

---

[98] A.R. 65.  A consultative examination is a physical or mental examination or test purchased at the SSA's request and expense from a treating source or another medical source. 20 C.F.R. § 404.1519.

[99] A.R. 69.  The only listing considered by the state agency was Listing 1.04: Spine Disorders. A.R. 66.  Primary headache disorder is not included in the Listing of Impairments (listings); however, SSA may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing.  SSR 19-4p explains, "Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI of a primary headache disorder."  A person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02, and SSA may find that his or her MDI(s) medically equals the listing. *Id.*

[100] A.R. 67.

[101] A.R. 67-69.  The RFC did include restrictions on exposure to concentrated vibrations and hazards, such as heights and machinery.  A.R. 69.

limitations" but were not overall disabling, an unresolved factual conflict exists which requires further administrative proceedings. The Commissioner asks the Court to allow the ALJ an opportunity to "take steps necessary to fully develop the record" and "[o]ffer the claimant an opportunity for a new hearing and submit additional evidence in support of his claim." The Commissioner also asks the Court to order the ALJ, on remand, to obtain supplemental medical expert testimony and obtain vocational witness testimony.[102]

However, "[Ninth Circuit] precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under [the] credit-as-true analysis."[103] Moreover, further proceedings are only required where there are *significant* factual conflicts between the rejected evidence and the record.[104] Although the opinion of the state agency reviewing physician is not in full accord with the opinions of Plaintiff's treating physician or the testifying medical expert, the mere existence of a conflicting opinion, especially one based on only a fraction

---

[102] Docket 21 at 6.

[103] *Garrison,* 759 F.3d at 1021 ("Allowing the commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.") (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).

[104] *Treichler,* 775 F.3d at 1105.

Case 3:21-cv-00187-SLG   Document 24   Filed 06/22/22   Page 23 of 26

of the overall medical record, is not independently sufficient to create a significant conflict in the record.[105]

Accordingly, the Court concludes the record is fully developed, and further proceedings would serve no useful purpose.

D. Crediting as True Demonstrates Disability

As to the third requirement for immediate payments of benefits, for the reasons discussed above, Plaintiff's subjective complaints and the medical opinions of Drs. Bursell and Smiley should be credited-as-true. Accordingly, the ALJ's conclusion that Plaintiff did not meet or equal Listing 11.02(D) is not supported by substantial evidence and not free of harmful legal error. Because Plaintiff's impairment equaled Listing 11.02(D) during the disability period, Plaintiff should have been presumed disabled at step three of the sequential analysis.[106]

---

[105] *See, e.g., Garrison,* 759 F.3d at 1009 (reversing and remanding for payment of benefits based on the treating physician's opinion, despite the existence of both an agency reviewing physician's opinion and consultative examiner's opinion that conflicted with the opinion of the treating physician.); *Fulsaas v. Berryhill,* 2018 WL 2091357, at *11 (D. Or. 2018), *report and recommendation adopted,* 2018 WL 2090475 (D. Or. 2018) (citing *Moody v. Berryhill,* 2017 WL 4740792, *9 (D. Or. 2017) ("[A]n isolated examining physician's opinion is not independently sufficient to create a significant conflict in the record, such that an award of benefits would be precluded.); *Page v. Colvin*, 2016 WL 1110263, at *12 (N.D. Cal. 2016) (finding further proceedings "would serve no useful purpose" and remanding for payment of benefits when a treating physician endorsed disability despite a conflicting consultative examiner opinion).

[106] *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990) (When a claimant's medical condition meets or equals a listing and he is not working, he "is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work").

Case 3:21-cv-00187-SLG   Document 24   Filed 06/22/22   Page 24 of 26

A claimant who meets a listing at step three in the sequential disability evaluation is disabled. A court need not go further.[107] However, assuming arguendo, Plaintiff was not found disabled at step three, Plaintiff still should have been found disabled at step five. If Dr. Smiley's opinion is credited-as-true, Plaintiff is likely to miss at least three days of work each month; and the VE testified that a person with Plaintiff's impairments who would regularly miss that much work each month was not employable.[108] Therefore, if the improperly discredited evidence were credited as true, Plaintiff would be awarded disability benefits.

E. Record as a Whole Does Not Create a Serious Doubt of Disability

Even when all three credit-as-true criteria are met, a court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]"[109] Based on a comprehensive review of the record as a whole, the Court does not have serious doubt that the Plaintiff is disabled, and therefore, exercises its discretion to remand this case for the immediate award of benefits.

---

[107] *Id.* ("[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.").

[108] *See Smith v. Saul*, 820 F. App'x 582, 586 (9th Cir. 2020) (remanding for calculation and award of benefits when VE finds no jobs for individual with limitations opined by treating physician).

[109] *Garrison*, 759 F.3d at 1021.

Case No. 3:21-cv-00187-SLG
Decision and Order
Page 25 of 26

## V.   ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and are not supported by substantial evidence in the record.  Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 15 is GRANTED, the Commissioner's motion at Docket 21 is DENIED; and this this matter is REVERSED and REMANDED to the Commissioner for the immediate calculation and award of benefits.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 22nd day of June, 2022, at Anchorage, Alaska.

_/s/ Sharon L. Gleason_____
UNITED STATES DISTRICT JUDGE